IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| TIFFANY LAUB,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 1:14-cv-00109<br>Senior Judge Haynes |

## MEMORANDUM

Plaintiff, Tiffany Catherine Laub, filed this action under 42 U.S.C. § 405(g) against the Defendant Carolyn Colvin, acting Commissioner of Social Security, seeking judicial review of the Commissioner's denial of her application for supplemental security income ("SSI") and child's insurance benefits ("CIB") under the Social Security Act. On July 14, 2010, Plaintiff filed a claim for SSI and two claims for CIB alleging an onset date of October 11, 1991, her birthdate, which was amended at the administrative hearing to May 1, 2010. Plaintiff cited attention deficit disorder, a learning disability and a speech problem as the basis of her claim. After a hearing, the Administrative Law Judge ("ALJ") denied Plaintiff's claims.

In sum, the ALJ evaluated Plaintiff's claims for CIB and SSI benefits using the sequential evaluation process set forth at 20 C.F.R. § 416.920. (Docket Entry No. 11, Administrative Record at 14-15). At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since her amended alleged onset date. Id. at 15. At step two, the ALJ determined

that Plaintiff had the following severe impairments: borderline intellectual functioning; receptive and expressive language impairment. Id. At step three, the ALJ found that Plaintiff did not prove an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 16. The ALJ did not find that Plaintiff had any exertional limitations, but did apply the following nonexertional limitations:

> [D]ifficulty communicating verbally with co-workers until familiarity is established; able to understand and remember one- to three-step tasks and instructions; able to focus, attend to, and concentrate on tasks for periods of at least two hours without unusual distraction or need for special supervision; able to establish and maintain appropriate interactions and relationships with peers and supervisors without exhibiting behavioral extremes; able to adapt to routine workplace changes, travel independently, avoid normal hazards and set and carry out realistic goals.

Id. at 17. The ALJ also consulted with a vocational expert, and found that although Plaintiff did not have any past relevant work, Plaintiff did have the capacity to perform jobs that existed in significant numbers in the economy. Id. at 20. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act and was not entitled to either CIB or SSI disability benefits. Id. at 21. The ALJ's decision was issued on October 23, 2012. Id. at 10-12. Plaintiff requested review on December 20, 2012, and the request was denied on June 23, 2014. Id. at 7-9, 1-4.

Before the Court is Plaintiff's motion for judgment on the administrative record (Docket Entry No. 13) to which the Commissioner filed a response (Docket Entry No. 17). After review of the parties' motion papers and the administrative record, the Court concludes that Plaintiff's motion for judgment on the record should be granted.

## A. Review of the Record

The Administrative Record reflects that Plaintiff is now a 23 year old woman, with a special education diploma. (Docket Entry No. 11, Administrative Record at 367). Plaintiff attended the Tennessee Vocational Center, where she trained to do piece work. Id. at 32. She was paid during this time, but the Center has been unable to find her other employment. Id. at 124, 32. She no longer works with the Center, although apparently the Center is still attempting to place Plaintiff in another position. Id. at 32. The ALJ found that this was not substantial gainful employment or past relevant work. Id. at 15, 19.

Plaintiff originally alleged a disability onset date of October 11, 1991, her birthdate. Id. at 119. At the hearing, Plaintiff amended her onset date to May 1, 2010. Id. Plaintiff filed two CIB claims and an SSI claim on July 14, 2010, and both were denied on October 29, 2010. Plaintiff applied for reconsideration and was denied on January 27, 2011. Plaintiff requested a hearing on March 8, 2012. On October 23, 2012, the ALJ concluded after a hearing that Plaintiff was not disabled. Plaintiff requested review on December 20, 2012, and was denied.

The administrative record contains some medical reports predating the alleged onset date of disability. These include notes for school absences, two separate visits for injuries to Plaintiff's right hand, a foot injury, and a well woman visit in the two years prior to the onset date. Id. at 267-83. On June 15, 2009, Plaintiff visited a doctor for a well woman visit, with no complaints. Id. at 271-76. Plaintiff was 17 years old, and was evaluated with a pediatric symptom checklist, according to which "[t]he presence of significant behavioral or emotional difficulties is suggested when children score at or above 24-28 points based on age." Id. at 271. Plaintiff had a total score of 3. Id. This was based on her mother's evaluation that she often

"spends more time alone" and "does not listen to rules" and sometimes is "absent from school" – with a note, when sick – and sometimes "acts younger than children his or her age." Id. at 272. On this visit, the nurse wrote "WWE – stutter" and "EPSDT" on Plaintiff's chart. Id. at 276. The record also contains school records from fourth grade through high school, indicating Plaintiff's need for special education and for speech therapy. Id. at 366-88.

Plaintiff also has records from the period after her onset date. On July 19, 2010, Plaintiff completed a battery of tests for a vocational evaluation report at Tennessee Rehabilitation Center. Id. at 284-90. The evaluator noted that:

> Tiffany's primary disability is listed as Mental Retardation. In a psychological evaluation conducted by Dr. Elliott Ward, Clinical Psychologist, on 5/12/09, intellectual functioning was assessed to be in the Borderline range (FSIQ = 73). General ability and verbal comprehension were in the extremely low range. Perceptual reasoning was in the borderline range. Working memory was in the low average range and processing speed was in the average range. Achievement testing indicated academics with grade equivalents ranging from 2.6 (passage comprehension) to 7.2 (math fluency). Assessment of adaptive behavior revealed social skills in the average range and conceptual, practical and overall adaptive skills in the borderline range.
> ...
> According to Tiffany's Certification of Eligibility dated 6/2/09, she has severely impaired expressive and/or receptive communication, either oral or written.

Id. at 284-85.

On the CareerScope Aptitude Assessment, Plaintiff was below average in general learning ability, verbal aptitude, and numerical aptitude. Id. at 286. On July 20, 2010, Plaintiff had participated in a situational assessment for the warehouse training program. Id. at 287. She was not recommended for this program because "[s]he had challenges with following oral and written instructions. She demonstrated some challenges with work habits. She exhibited challenges with work quality and work speed." Id. Plaintiff was recommended for the

4

groundskeeping training program, in conjunction with related instruction "to improve her fraction and measurement skills" and a course "to determine equipment operation and power tool usage potential." Id.

On the basic independent living skills survey, Plaintiff "got 0 out of 6 (0%) measurement conversion questions correct. She got 3 out of 7 (43%) of the length measurement questions correct. She had minimal difficulty with filling out a sample check and a sample deposit slip. She was not able correctly (sic) fill out a sample check register." Id. at 288. On the other sections of the survey, Plaintiff scored above 80%. Id. On the employment readiness assessment, Plaintiff "needs improvement" in every category. Id. The recommendation following this evaluation was that Plaintiff be placed in the groundskeeping training program with related courses, that Plaintiff undergo a recreation therapy assessment and a transitional living skills assessment, that Plaintiff be referred to driver's education, and that Plaintiff take an employment readiness class. Id. at 289.

On September 21, 2010, Plaintiff was evaluated by a speech-language pathologist. Id. at 291-94. It was noted under cognitive abilities that although no documentation was provided, "[d]eficits are suspected." Id. at 292. The assessment found Plaintiff's hearing and speech abilities normal, but her language skills "indicate a severe receptive & expressive language impairment." Id. at 293. Plaintiff's "[s]entence structure, vocabulary & grammar were poor," and "[g]eneral pragmatic language skills are affected by poor topic maintenance skills." Id. at 293-94. The pathologist concluded, "In conversational speech, she left out some words in sentences which sometimes made it difficult to know exactly what she meant. ... She will have difficulty understanding sentences of longer length & complexity including instructions. She

5

will also have difficulty effectively communicating specific and or detailed information to others." Id. at 294.

On September 29, 2010, Plaintiff was evaluated by a psychologist. Id. at 295-301. The doctor noted that "[s]he came across as low functioning from a cognitive perspective. IQ was estimated to be based on her presentation and speech, in the low borderline to mild range for mental retardation." Id. at 295. Plaintiff was given an IQ test and scored a Full Scale IQ of 72, a score that "fell in the borderline range. There are 95 out of 100 chances that her true IQ falls between 68 and 77." Id. at 298. The doctor also noted that "[p]resent assessment results suggest the presence of borderline intellectual functioning, but the possibility of mild mental retardation could not be ruled out." Id. Plaintiff was also tested for grade equivalency in reading, spelling and math. Id. The doctor found that "[t]he claimant's standard scores in all areas of achievement test fell in the borderline range. She does appear to be functionally literate. These standard scores are more or less commensurate with her [Full Scale IQ]." Id. at 299. The doctor concluded that "it is difficult to determine with accuracy without any psychoeducational records, that the claimant actually does have mental retardation." Id. She specifically stated that Plaintiff's FSIQ score of 72 "certainly does not preclude the possibility of mental retardation." Id. The doctor also found that Plaintiff could learn and understand simple instructions, and could have sufficient concentration and pace for these tasks, although "if she is unable to perform complex instructions, then obviously she would not be able to sustain concentration and pace under those circumstances." Id.

On October 19, 2010, a medical consultant evaluated Plaintiff's claim. Id. at 302-10. Relying on the September assessments, the consultant concluded that "[s]upervisors and co-

workers will have some trouble understanding [Plaintiff's] communication because of the immature nature of her language. They may need to ask her to clarify or to add information. She will need additional instructions and someone should always check that she has clearly understood tasks, particularly if they are presented verbally." Id. at 306, 309. Further, the consultant concluded that "[s]peech will not limit [Plaintiff] vocationally but language expression skills will pose some limitation until co-workers become accustomed to her mode of expression." Id. at 309.

On October 22, 2010, a psychiatric consultant reviewed Plaintiff's record. Id. at 311-24. The psychiatrist evaluated Plaintiff under "12.02 Organic Medical Disorders," and noted "BIF [borderline intellectual functioning]." Id. at 311-12. For limitations, the psychologist checked the boxes for mild restrictions in activities of daily living and difficulties in maintaining social functioning, and a moderate restriction in difficulties in maintaining concentration, persistence, or pace. Id. at 321. The consultant concluded that "based on all evidence in file, [moderate] in [concentration, persistence, or pace], adapt and detailed. Consistent with [Medical Assessment] at [Mental Status Evaluation] which is given great weight." Id. at 323.

Also on October 22, 2010, another medical consultant evaluated Plaintiff's file. Id. at 325-28. On this mental residual functional capacity assessment, the box indicating a moderate limitation was checked for several areas: the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to respond

7

appropriately to changes in the work setting. Id. at 325-26. To explain these summary conclusions, the consultant wrote:

> a. able to understand and remember one, two and three step but not multistep instructions
> b, able to maintain attention, concentration, persistence and pace for above tasks for at least 2 hours
> c. able to interact approp with others
> d, able to adapt to infrequent changes in the workplace

Id. at 327.

On October 29, 2010, Plaintiff's application for CIB and SSI benefits was denied. On December 23, 2010, Plaintiff applied for reconsideration. Id. at 77. On January 25, 2011, another psychiatric consultant reviewed Plaintiff's file. Id. at 346-59. This psychiatrist also evaluated the record for "12.02 Organic Mental Disorders," with the note "BIF [borderline intellectual functioning]." Id. at 346-47. On this evaluation, the mild limitations box was checked for difficulties in maintaining social functioning and the moderate limitations box was checked for restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace. Id. at 356. This evaluation concluded, "[o]ther evidence above indicates [claimant] functions in the [borderline intellectual functioning] range. Serious but short of listings. Mental [Medically Determinable Impairment] imposes no more than moderate overall limitations." Id. at 358.

Also on January 25, 2011, a second mental residual functional capacity assessment was completed. Id. at 360-63. On this evaluation, the moderately limited box was checked for six out of eight of the skills listed under sustained concentration and persistence: the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to perform

8

activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or proximity to others without being distracted by them, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Id. at 360-61. The moderately limited box was also checked for all four of the adaptation skills: the ability to respond appropriately to changes in the work setting, the ability to be aware of normal hazards and take appropriate precautions, the ability to travel in unfamiliar places or use public transportation, and the ability to set realistic goals or make plans independently of others. Id. at 361. The evaluation concludes:

> A. Claimant has the ability to understand and remember one-three step tasks and instructions.
> B. Claimant has the ability to focus, attend to and concentrate on tasks for periods of at least two hours without unusual distraction or need for special supervision.
> C. Claimant has the ability to establish and maintain appropriate interactions and relationships with peers and supervisors without exhibiting behavioral extremes.
> D. Claimant can adapt to routine workplace changes, travel independently, avoid normal hazards and set and carry out realistic goals.

Id. at 362.

On January 26, 2011, another medical consultant noted that, with regard to speech, Plaintiff had made no new allegations of change in her condition, and had not included new medical reports. Id. at 364. This consultant affirmed the report from October 19, 2010.

Plaintiff's request for reconsideration was denied on January 27, 2011. Plaintiff requested a hearing on March 8, 2011. After a hearing, the ALJ concluded Plaintiff was not disabled on October 23, 2012. Plaintiff requested review on December 20, 2012, and the request was denied on June 23, 2014.

## B. CONCLUSIONS OF LAW

In reviewing the Commissioner's decision, this Court determines whether substantial evidence exists in the record to support the Commissioner's decision and whether any legal errors were committed in the process of reaching that decision. Landsaw v. Sec'y of Health and Human Serv., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996) (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389-90 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. Hurst v. Sec'y of Health and Human Serv., 753 F.2d 517, 519 (6th Cir. 1985).

In this action, Plaintiff contends that (1) the ALJ failed to consider Plaintiff's impairments in combination, and (2) the testimony from the vocational expert was not consistent with Department of Labor statistics, and the ALJ did not resolve this conflict.

Child's Insurance Benefits are codified in Title II of the Social Security Act. Under this provision:

> (a) General. You are entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if –
> (1) You are the insured person's child, based upon a relationship described in §§ 404.355 through 404.359;

(2) You are dependent on the insured, as defined in §§ 404.360 through 404.365;
(3) You apply;
(4) You are unmarried; and
(5) You are under age 18; you are 18 years old or older and have a disability that began before you became 22 years old; or you are 18 years or older and qualify for benefits as a full-time student as described in § 404.367.

20 C.F.R. § 404.350(a).

Plaintiff was 18 years old when she applied for benefits and she alleged that her disability had begun prior to age 22. The original onset date alleged was her birthdate; the amended onset date was May 1, 2010, when she would have been 18 years old. Although a different evaluation process would have applied to the period before Plaintiff turned 18 years old, for the period after, "[t]he five-stop (sic) sequential evaluation process set forth in 20 C.F.R. § 416.920 applies to a claim for SSI by an individual who has attained age 18." Tennyson v. Comm'r Soc. Sec., 2011 WL 1124761 at *3 (S.D. Ohio March 4, 2011). As such, the evaluation for Plaintiff's benefits under each of the CIB claims and the SSI claim is the same. "Disability" for these claims is defined as the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Scott v. Comm'r of Soc. Sec., 2013 WL 237296 at *13 (N.D. Ohio Jan. 3, 2013) (citing 42 U.S.C. § 423(d)(1)(A)).

First, Plaintiff alleges that the ALJ failed to consider properly her impairments in combination as the ALJ is required to do. The ALJ found that Plaintiff had two severe impairments: borderline intellectual functioning and receptive and expressive language impairment. The ALJ considered these impairments and found that Plaintiff had the following non-exertional limitations:

> [D]ifficulty communicating verbally with co-workers until familiarity is established; able to understand and remember one- to three-step tasks and instructions; able to focus, attend to, and concentrate on tasks for periods of at least two hours without

11

unusual distraction or need for special supervision; able to establish and maintain appropriate interactions and relationships with peers and supervisors without exhibiting behavioral extremes; able to adapt to routine workplace changes, travel independently, avoid normal hazards and set and carry out realistic goals.

(Docket Entry No. 11 at 17).

The ALJ's determination that Plaintiff is "able to focus, attend to, and concentrate on tasks for periods of at least two hours without unusual distraction or need for special supervision" is not supported by substantial evidence. The consultants reviewing Plaintiff's file found that Plaintiff has a "moderate" restriction in maintaining concentration, persistence, and pace. Id. at 321; 325-26; 356. On a more specific evaluation that evaluated concentration, persistence, and pace in eight parts, Plaintiff was "moderately limited" in six out of the eight relevant skills. Id. at 360-61. The ALJ relied on the conclusions of these evaluations rather than the analyses.

Further, the ALJ did not consider the combination of Plaintiff's borderline intellectual functioning and her language impairment. Only two physicians evaluated Plaintiff in regard to speech. In September 2010, a speech-language pathologist stated that it was "difficult to know exactly what [Plaintiff] meant" because "she left out some words in sentences." Id. at 291-94. The pathologist also stated that Plaintiff "will have difficulty understanding sentences of longer length & complexity including instructions. She will also have difficulty effectively communicating specific and or detailed information to others." Id. at 294.

In October 2010, a medical consultant also addressed Plaintiff's language impairment. Id. at 302-10. The consultant relied on the speech-language pathologist's report and stated, "[s]upervisors and co-workers will have some trouble understanding [Plaintiff's] communication because of the immature nature of her language. They may need to ask her

12

to clarify or to add information. She will need additional instructions and someone should always check that she has clearly understood tasks, particularly if they are presented verbally." Id. at 306, 309. Again, the ALJ relied only on the conclusion of this consultation that stated "language expression skills will pose some limitation until co-workers become accustomed to her mode of expression," rather than the analysis. Id. at 309.

The ALJ does not address how these limitations will affect the restrictions listed in the RFC. Each of the restrictions listed by the ALJ are affected by Plaintiff's limited ability to understand what others say and to be understood. Yet the ALJ does not address how Plaintiff's impairments might combine to limit her further. When an ALJ's explanation is lacking, her analysis does not meet the substantial evidence standard. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 246 (6th Cir. 2007).

Because the ALJ did not consider properly the effects of Plaintiff's severe impairment of borderline intellectual functioning and the effect is has on her ability to perform work, or the effect of the combination of borderline intellectual functioning and language impairment, the Court concludes that this action should be remanded for the award of benefits.

Regarding the ALJ's failure to consider Plaintiff's impairments in combination, Plaintiff also cites the Social Security Administration's Program Operations Manual System DI 25020.010 Mental Limitations. This section provides:

> 2. Medical Listing Not Met or Equaled
> a. It cannot be assumed that a failure to meet or equal one of the medical listings for mental impairments equates with the capacity to do at least unskilled work.
> b. If a medical listing is not met or equaled, the process must continue to consider whether the individual can meet the mental demands of [past relevant work] and, if not, whether he or she has the ability to adjust to other work considering his or her remaining mental and other functional capacities and vocational factors.

13

3. Mental Demands of Unskilled Work
a. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to:
- understand, carry out, and remember simple instructions;
- make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions.
- respond appropriately to supervision, coworkers and work situations; and
- deal with changes in a routine worksetting.

SSA POMS DI 25020.010(A)(2)-(3).

Although the ALJ did not note this provision specifically, the ALJ referenced each of these skills in the RFC. Failure to cite to the POMS provision does not reflect that the ALJ failed to consider the listed limitations.

Plaintiff next alleges that the vocational expert did not correctly describe the jobs Plaintiff was able to perform, and that the ALJ did not adequately resolve this conflict. After providing hypotheticals – with which Plaintiff does not find fault – the ALJ asked the vocational expert to provide three jobs that Plaintiff would be capable of performing. (Docket Entry No. 11 at 45). The vocational expert listed packer, conveyor feeder, and cleaner. Id. The ALJ then asked "in accordance with Social Security Rule 00-4P for the use of vocational experts, does the evidence that you provided conflict with the Dictionary of Occupational Titles?" to which the vocational expert answered no. Id. at 46.

Plaintiff's attorney then questioned the vocational expert, asking more specifically how Plaintiff's skills would detract from the availability of these positions. Upon researching the answers, Plaintiff has found that they do not comport with the Dictionary of Occupational Titles. Plaintiff alleges that taking the Dictionary of Occupational Titles into account, she would be unable to perform any of the three jobs listed by the vocational expert. Plaintiff asserts that the ALJ was required by SSR 00-4p to resolve this conflict.

"The SSR 00-4p does not address what to do when a conflict is not apparent." Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006). At the hearing, neither Plaintiff nor Plaintiff's attorney alleged that a conflict existed between the vocational expert's claims and the Dictionary of Occupational Titles. "Consistent with the SSR 00-4p, the ALJ asked if there was a conflict. The vocational expert testified that there was not. [Plaintiff] did not bring the vocational expert's mistake to the ALJ's attention. Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct. Futhermore, even if there is a conflict between the expert's testimony and the DOT, 'neither the DOT or [the expert's testimony] automatically trumps when there is a conflict.' ... Because [Plaintiff] did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved. Here, the ALJ specifically asked if there was a conflict and the uncontradicted testimony of the vocational expert indicated that no conflict existed." Id. (citing SSR 00-4p). Plaintiff did not object at the hearing to the vocational expert's testimony, and cannot now rely on the conflict as a basis to remand this claim.

For these reasons, the Court concludes that Plaintiff's motion for judgment on the record (Docket Entry No. 13) should be granted and Plaintiff awarded benefits.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of July, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge